UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
─────────────────────────────────

CARLTON TILLERY,

                          Petitioner,

                                              9:10-CV-1298
v.                                            (GTS)

JOHN B. LEMPKE,

                          Respondent.
─────────────────────────────────

APPEARANCES:                            OF COUNSEL:

CARLTON TILLERY, 08-A-1620
  Petitioner, *Pro Se*
Cayuga Correctional Facility
P.O. Box 1186
Moravia, NY 13118

HON. ERIC T. SCHNEIDERMAN              PRISCILLA I. STEWARD, ESQ.
Attorney General for the State of New York    Assistant Attorney General
  Counsel for Respondent
120 Broadway
New York, NY 10271

HON. GLENN T. SUDDABY, United States District Judge

## MEMORANDUM-DECISION and ORDER

        Currently before the Court, in this habeas proceeding filed by Carlton Tillery ("Petitioner")

against John B. Lempke ("Respondent") pursuant to 28 U.S.C. § 2254, is Petitioner's Petition.

(Dkt. No. 1 [hereinafter "Petition"].)  For the reasons set forth below, the Petition is denied and

dismissed in its entirety.

## I.      RELEVANT BACKGROUND

### A.      Summary of Petition

Petitioner filed his Petition on October 29, 2010.  Generally, Petitioner challenges his

conviction, in Albany County Court on March 27, 2008 (following a jury trial), of one count of

criminal possession of a weapon in the second degree, for which he was sentenced to a

determinate term of nine years imprisonment.  (Petition at ¶¶ 1-7.)  In support of his request for

federal habeas intervention, Petitioner asserts several claims.  (*See generally* Petition.)  More

specifically, he claims that (1) his conviction was based upon legally insufficient evidence (*id.*,

Ground A),[1] (2) recent Supreme Court precedent renders his conviction unconstitutional (*id.*,

Ground B), (3) the imposed sentence amounts to a violation of the Eighth Amendment's ban on

cruel and unusual punishment (*id.*, Ground C), (4) he was deprived of his right to a fair trial by

prosecutorial misconduct (*id.*, Ground D), (5) his trial counsel rendered ineffective assistance by

failing to object to the prosecution's "egregious summation" (*id.*, Ground E), and (6) his

statements to the police were admitted against him at trial in violation of his Fourth and Sixth

Amendment rights.  (*id.*, Grounds F, G.)

### B.      State Court Proceedings

On September 12, 2007, an Albany County Grand Jury returned an Indictment against

Petitioner.  (Dkt. No. 9-1 at 42 [hereinafter "Indictment"].)  In that Indictment, Petitioner was

charged with second degree criminal possession of a weapon, in violation of § 265.03(3) of the

New York Penal Law (hereinafter "Penal Law.")  (Indictment, Count One.)

---

[1]      Petitioner chose to refer to the grounds he asserts in his Petition by the letters "A"
through "G."  (Petition at 4-5.)

Petitioner was tried on the foregoing charge before a jury in Albany County Court.  County

Court Judge Stephen W. Herrick presided over the trial.  At the conclusion of the trial, Petitioner

was found guilty of the charge.  The New York State Supreme Court, Appellate Division, Third

Department summarized the burden of proof on the District Attorney at the trial, together with the

evidence presented by the prosecutor in support of the weapons possession charge, as follows:

> The People were required to prove that [Petitioner] possessed a
> loaded firearm in a place that was not his home or business (*see*
> Penal Law § 265.03 [3] ).  A "firearm" includes "a shotgun having
> one or more barrels less than eighteen inches in length" (Penal Law
> § 265.00[3]), and the term "loaded firearm" includes "any firearm
> which is possessed by one who, at the same time, possesses a
> quantity of ammunition which may be used to discharge such
> firearm" (Penal Law § 265.00[15] ).  There was evidence at trial that
> the shotgun barrel had been sawed off to less than 18 inches, the gun
> was operable, the ammunition in [Petitioner's] pocket could be used
> in that weapon and the police saw [Petitioner] possessing the toy
> alligator in which the weapon had been placed.  Viewed most
> favorably to the People, the evidence is legally sufficient since there
> was a valid line of reasoning and permissible inferences for a
> rational person to arrive at the conclusion reached by the jury.

*New York v. Tillery*, 60 A.D.3d 1203, 1205-06 (N.Y. App. Div., 3d Dept. 2009), *leave denied*,

*New York v. Tillery*, 12 N.Y.3d 860 (N.Y. 2009).

On March 5, 2007, Petitioner was sentenced to the nine year prison term referenced above.

(Dkt. No. 10, Attach. 2 at 178-205 [Transcript of Sentencing of Carlton Tillery (3/5/07)]) at 25.)

Petitioner's conviction and sentence were unanimously affirmed by the Third Department in its

decision quoted above.  *See Tillery*, 60 A.D.3d at 1203-06.

**C.    Proceedings in this Court**

Petitioner commenced this action by filing a *pro se* petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254 in this District on October 28, 2010.  (Petition.)  On March

18, 2011, the Office of the Attorney General of the State of New York, acting on Respondent's

3

behalf, filed an answer in opposition to the Petition, together with various state court records relating to his conviction.  (Dkt. Nos. 7-10.)  In opposing the Petition, Respondent argues that Petitioner's claims must be denied because they were either denied by the state courts on procedural grounds or are substantively without merit.  (Dkt. No. 8, Respondent's Memorandum of Law in Opposition to Petition [hereinafter "Resp. Mem."])  On April 25, 2011, Petitioner filed a Traverse in further support of his habeas application.  (Dkt. No. 12 [hereinafter "Traverse"].)  This matter is currently before this Court for disposition.

**II.     ANALYSIS**

     **A.     Claim Barred by Independent-and-Adequate-State-Ground Doctrine**

In his second ground for relief, Petitioner claims that his conviction is "null and void" in light of recent Supreme Court precedent that addresses the scope of the Second Amendment to the United States Constitution.  (Petition, Ground B; Memorandum of Law in Support of Petition [Dkt. No. 1, Attach. 1 (hereinafter "Supporting Mem.")] at 1-10; Traverse at 5-7.)  More specifically, he claims that the weapons possession statute of which he was found guilty of violating "is unconstitutional both on its face and as applied" to Petitioner.  (Petition at ¶ 13.)

Respondent argues that Petitioner has procedurally defaulted on this claim because the County Court found that Petitioner had improperly failed to raise such claim in his direct appeal. (Resp. Mem. at 29-33.)

It is "well established that federal courts will not review questions of federal law presented in a habeas petition when the state court's decision rests upon a state-law ground that 'is independent of the federal question and adequate to support the judgment.'"  *Cone v. Bell*, 129 S. Ct. 1769, 1780 (2009) (quoting *Coleman v. Thompson*, 501 U.S. 722, 720 [1991]).

4

In addressing Petitioner's claim that his conviction violated the Second Amendment's pronouncement regarding the right of United States citizens to keep and bear arms, the County Court cited New York's Criminal Procedure Law [hereinafter "NY CPL"], § 440.10[2][c][2] and concluded that Petitioner had "failed to demonstrate justification for failing to raise the issue[] on appeal and may not use the present motion as a substitute for a direct appeal."  (Dkt. No. 9, Attach. 12 [Decision and Order of Judge Herrick (7/31/09)] at 3.)  The denial of a claim in light of § 440.10(2)(c) is a procedural denial of such a claim.  *See Artuz v. Bennett*, 531 U.S. 4, 10-11 (2000); *Ramirez,* 280 F.3d at 89; *Kent v. Smith*, 05-CV-9785, 2007 WL 2907350, at *8 (N.D.N.Y. Oct. 4, 2007) (Kahn, J.); *Veras v. Strack*, 98-CV-7610, 2000 WL 8249, at *1 (S.D.N.Y. Jan. 4, 2000) (holding that the denial of a claim under NY CPL § 440.10[2][c] is an adequate and independent state procedural ground barring federal habeas review of such a claim) (citing *Dorsey v. Irvin*, 56 F.3d 425 [2d Cir. 1995]).  Therefore, the County Court clearly denied Petitioner's constitutional claim on procedural grounds.

However, to constitute an "adequate and independent" state ground sufficient to preclude federal habeas review of a claim, the federal court must also find that the state procedural rule is "firmly established and regularly followed" by the state courts, and that application of the rule

---

[2]     NY CPL § 440.10 provides, in pertinent part, as follows:

> [A County Court] must deny a motion to vacate a judgment when . . . [a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to . . . raise such ground or issue upon an appeal actually perfected by him.

(NY CPL § 440.10[2][c].)

5

would not be "exorbitant." *Clark v. Perez*, 510 F.3d 382, 391 (2d Cir. 2008); *Murden v. Artuz*, 497 F.3d 178, 192 (2d Cir. 2007); *Garvey v. Duncan*, 485 F.3d 709, 713-14 (2d Cir. 2007). The procedural denial of claims under NY CPL § 440.10(2)(c) is both firmly established and regularly followed in New York State courts. *See Louis v. Fischer*, 04-CV-2887, 2007 WL 4198255, at *20-21 (E.D.N.Y. June 25, 2007); *Smith v. Artus*, 03-CV-6982, 2004 WL 789769, at *16 (S.D.N.Y. Apr. 14, 2004) ("[F]ailure to comply with CPL § 440.10(2)(c) creates a procedural bar to federal habeas review" that is "both an 'independent' and an "adequate" state ground for its decision."). Furthermore, nothing before this Court suggests that the facts or circumstances related to this action presents an exceptional case such that this Court's application of the above-described procedural bar as to these claims would be exorbitant or otherwise inappropriate.[3]  *See Clark*, 510 F.3d at 391; *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003) (discussing "guideposts" federal courts should consider in ascertaining whether application of the procedural bar is appropriate); *see*, *e.g.*, *Robinson v. Perlman*, 02-CV-8709, 2005 WL 6274288, at *6-7 (S.D.N.Y. Apr. 20, 2005) (application of adequate and independent state procedural doctrine not "exorbitant" where party failed to preserve claim for appellate review); *Smith*, 2004 WL 789769, at *16 ("[F]ederal habeas courts have routinely held that the failure to comply with CPL § 440.10[2][c] creates a procedural bar to federal habeas review.").[4]  Petitioner has therefore procedurally defaulted on his second ground for relief.

---

[3]      The Supreme Court has opined that there is a "small category" of "exceptional cases in which [an] exorbitant application of a generally sound [procedural] rule renders the state ground inadequate to stop consideration of a federal question." *Lee v. Kemna*, 534 U.S. 362, 376, 381 (2002).

[4]      Significantly, it has been observed that, even if a state procedural rule is "discretionary," it may nevertheless serve as an "adequate and independent" state rule barring future habeas claims. *Beard v. Kindler*, 130 S. Ct. 612, 618 (2009). Moreover, a discretionary rule may be "firmly established and regularly followed" even if the appropriate exercise of discretion may allow consideration of the claim in some cases but not others. *Beard,* 130 S. Ct. at 618.

Federal courts may consider the merits of a procedurally defaulted claim only where the petitioner can establish both cause for the procedural default and resulting prejudice, or, alternatively, that a fundamental miscarriage of justice would occur absent federal court review of the claim.  *See Dixon v. Miller*, 293 F.3d 74, 80-81 (2d Cir. 2002) (quoting *Coleman*, 501 U.S. at 750); *see also St. Helen v. Senkowski*, 374 F.3d 181, 184 (2d Cir. 2004) (holding that, "[i]n the case of procedural default . . . [federal courts] may reach the merits of the claim 'only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent' ") (quoting *Bousley v. United States*, 523 U.S. 614, 622 [1998]); *Calderon v. Perez*, 10-CV-2562, 2011 WL 293709, at \*20 (S.D.N.Y. Jan. 28, 2011); *Parker v. Phillips*, 05-CV-1323, 2008 WL 4415255, at \*3 (E.D.N.Y. Sept. 24, 2008) (holding that federal courts may consider procedurally barred claims only where the petitioner establishes either cause for his default and prejudice therefrom, or that he is actually innocent of the crimes of which he was convicted).

To establish legal "cause" that would enable this Court to consider his procedurally forfeited claim, Petitioner must show that some objective, external factor impeded his ability to preserve his constitutional claim for review by the County Court.  *See Coleman*, 501 U.S. at 753; *Restrepo v. Kelly*, 178 F.3d 634, 638 (2d Cir. 1999); *Pinero v. Greiner*, 519 F. Supp. 2d 360, 383 (S.D.N.Y. 2007) (quoting *Restrepo*, 178 F.3d at 638).  Examples of such external factors include "interference by officials," the ineffective assistance of counsel, or proof that "the factual or legal basis for a claim was not reasonably available" at the time of the petitioner's default.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986) (internal quotation marks omitted), *accord*, *Ikker v. Taylor*, 08-CV-3301, 2008 WL 5110866, at \*4 (E.D.N.Y. Dec. 3, 2008).

Nowhere in this action does Petitioner argue, much less establish, that legal cause exists that excuses his procedural default described above.  Specifically, although Petitioner asserts additional arguments in support of his constitutional claim in his Traverse (*id.* at 5-7), he never

claimed in that submission that his failure to raise his constitutional challenge in the context of his direct appeal may be legally excused by this Court (*id*).

Because Petitioner has not established cause for his procedural default, the Court need not consider whether he has suffered the requisite prejudice. *See Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985) (noting that federal habeas relief is unavailable under the limited exception permitting review of procedurally forfeited claims unless the petitioner demonstrates ***both*** cause and prejudice); *Long v. Lord*, 03-CV-0461, 2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006) (McCurn, J.); *D'Alessandro v. Fischer*, 01-CV-2551, 2005 WL 3159674, at *9, n.10 (S.D.N.Y. Nov. 28, 2005) (stating that, "[a]s Petitioner has not shown cause for his default, this Court need not even reach the question of whether Petitioner can show prejudice") (citing *Stepney*, 760 F.2d at 45).

The Court's finding that Petitioner has failed to demonstrate cause for his procedurally defaulted claim does not necessarily preclude this Court from considering his second ground for relief. This is because, as noted above, a federal court may properly review procedurally defaulted claims if it is convinced that the failure to consider the defaulted claims would amount to a fundamental miscarriage of justice. *See, e.g.*, *Dixon*, 293 F.3d at 80-81. However, the Second Circuit has noted that

> the fundamental miscarriage of justice exception is "extremely rare" and should be applied only in "the extraordinary cases." *Schlup v. Delo*, 513 U.S. 298, 321-22, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). " '[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley*[], 523 U.S. [at] 623 . . . . "To establish actual innocence, [a] petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.' " *Id.* (citing *Schlup*, 513 U.S. [at] 327-28) . . . .

*Sweet v. Bennett*, 353 F.3d 135, 142 (2d Cir. 2003); *see also D'Alessandro*, 2005 WL 3159674, at *8; *Marengo v. Conway*, 342 F. Supp.2d 222, 228 (S.D.N.Y. 2004).

The Court has carefully reviewed the state court record.  For the reasons stated more fully below in addressing Petitioner's claim that the evidence adduced at trial was insufficient to support the jury's verdict, this Court endorses the Third Department's determination that the proof of Petitioner's guilt of the weapons possession charge was legally sufficient to support the jury's verdict.  *See Tillery*, 60 A.D.3d 1205-06.

Because Petitioner cannot now seek safe harbor from the dismissal of his defaulted claim under this final exception permitting habeas review of his procedurally defaulted claims, the Court denies, as procedurally forfeited, his second ground for relief.[5]

**B.      Remaining Claims**

**1.      Standard of Review**

The enactment of the Anti-Terrorism and Effective Death Penalty Act (hereinafter "AEDPA") brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.  In discussing this deferential standard, the Second Circuit noted in *Jones v. West*, 555 F.3d 90 (2d Cir. 2009) as follows:

> [A] federal court may grant a writ of habeas corpus for a claim that
> has previously been adjudicated on the merits by a state court only if
> the adjudication of the claim:

---

[5]      Moreover, Petitioner's constitutional challenge to his conviction (Petition, Ground B) is also substantively without merit.  In support of this claim, Petitioner principally relies on the Supreme Court cases of *District of Columbia v. Heller*, 554 U.S. 570 (2008) and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010).  (Supporting Mem. at 1-10.)  However, the Supreme Court specifically noted in *Heller* that "weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns" do not fall within the Second Amendment's protection.  *Heller*, 554 U.S. at 625; *see also United States v. Arzberger*, 592 F. Supp.2d 590, 602 (S.D.N.Y. 2008) (citing *Heller*).  "Thus, a citizen's right to carry or keep sawed-off shotguns, for instance, would not come within the ambit of the Second Amendment." *United States v. Chester*, 628 F.3d 673, 679 (4th Cir. 2010) (citing *Heller*, 554 U.S. at 625).  Furthermore, nothing in the Supreme Court's decision in *McDonald* suggests that individuals may lawfully possess sawed-off shotguns such as the type Petitioner was found guilty of possessing.  Thus, Petitioner's Second Amendment claim also fails on the merits.

> (1) resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

*Id.* at 96 (quoting 28 U.S.C. § 2254[d]); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)

(citing 28 U.S.C. § 2254[d][1], [2]); *Hawkins v. Costello*, 460 F.3d 238, 242-43 (2d Cir. 2006).  In

providing guidance concerning application of this standard, the Second Circuit has observed as

follows:

> [A] state court's decision is "contrary to" clearly established federal
> law if it contradicts Supreme Court precedent on the application of a
> legal rule, or addresses a set of facts "materially indistinguishable"
> from a Supreme Court decision but nevertheless comes to a different
> conclusion than the Court did.  [*Williams v. Taylor*, 529 U.S. 362,]
> 405-06 [(2000)]; *Loliscio v. Goord*, 263 F.3d 178, 184 (2d Cir.
> 2001). . . .  [A] state court's decision is an "unreasonable application
> of" clearly established federal law if the state court "identifies the
> correct governing legal principle from [the Supreme] Court's
> decisions but unreasonably applies that principle to the facts" of the
> case before it.  *Williams*, 529 U.S. at 413.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d 147,

152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 [2d Cir. 2000]).

Significantly, a federal court engaged in habeas review is not charged with determining

whether the state court's ruling was merely incorrect or erroneous, but instead whether such

decision was "objectively unreasonable."  *Williams*, 529 U.S. at 409; *see also Sellan v. Kuhlman*,

261 F.3d 303, 315 (2d Cir. 2001).  "While the precise method for distinguishing objectively

unreasonable decisions from merely erroneous ones is somewhat unclear, it is well-established in

this Circuit that the objectively unreasonable standard of § 2254(d)(1) means that petitioner must

identify some increment of incorrectness beyond error in order to obtain habeas relief."  *Sorto v.*

*Herbert*, 497 F.3d 163, 169 (2d Cir. 2007) (internal quotation marks omitted). As the Court noted in *Schriro*, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro*, 550 U.S. at 473.

> **2.      Substance of Petitioner's Claims**

> **i.      Sufficiency of Evidence**

In his initial ground for relief, Petitioner argues that the evidence adduced at trial was insufficient to support the jury's guilty verdict. (Petition, Ground A.)

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he is charged. *Fiore v. White*, 531 U.S. 225, 228-29 (2001); *see also Jackson v. Virginia*, 443 U.S. 307, 316-22 (1979); *In re Winship*, 397 U.S. 358, 361-64 (1970). An inquiry into whether there was sufficient evidence adduced at trial to support a conviction "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

In the related criminal matter, the Appellate Division rejected Petitioner's challenge concerning the evidence of his guilt presented at his trial. *Tillery*, 60 A.D.3d 1205-06. This Court must therefore ascertain whether that determination is either contrary to, or represents an unreasonable application of, the clearly established Supreme Court precedent referenced above.

Petitioner initially argues that the evidence was insufficient because the prosecution failed to demonstrate that he exercised "dominion and control" over the firearm. (Petition, Ground A.) However, at trial, the prosecution established that on August 14, 2007–the date on which Petitioner was alleged to have criminally possessed the firearm–police officers heard an individual

yell "bring that shit over here," after which Petitioner walked to a parked car and removed a green,

stuffed toy alligator that was between two and three feet long from the rear seat of a car.

(Transcript of Trial of Carlton Tillery [Dkt. No. 10, Attach. 1] [hereinafter "Trial Tr."] at 250-51).

However, Petitioner started walking toward the men with the alligator, when one of them said

something to Petitioner; he looked in the direction of the police officers, walked back toward the

automobile and returned the alligator to the vehicle.  (*Id.* at 251.) After the police approached the

men, Petitioner repeatedly reached for his pocket which he subsequently admitted contained

bullets.  (*Id.* at 254.)[6]  When a police officer asked Petitioner for the location of the gun, Petitioner

volunteered that it was "in the car." (*Id.* at 255.)  The police then retrieved the toy alligator –

which Petitioner had placed in the car in the officer's presence – and discovered that it contained a

shotgun.  (*Id.* at 255-57.)  The above evidence plainly established that Petitioner exercised

dominion and control over the firearm he was found guilty of criminally possessing.

Petitioner next argues that because the prosecution did not demonstrate that he "lacked a

license to possess the firearm" this Court must set aside his conviction for the weapons possession

charge.  (Petition, Ground A; *see also* Supporting Mem. at 11-13.)   In his Traverse, he

specifically contends that having a license for a firearm: "is not a 'defense,' it is a matter the

prosecution must disprove beyond a reasonable doubt before the State can legitimately punish

constitutionally protected conduct."  (Traverse at 9.)

Certain exemptions, including the ability to obtain licenses to legally possess certain

firearms, exist in New York.  However, those statutory exemptions do not appear in the body of

the statutes that criminalize such conduct, *i.e.*, Penal Law §§ 265.01-265.05.  Instead, those

---

[6]      During the course of placing Petitioner under arrest, the police removed ten
shotgun rounds from his right front shirt pocket.  (Trial Tr. at 201-02.)

exemptions appear in a separate statute, Penal Law § 265.2.[7]  It is well settled that where, as in the case before this Court, an exception to a criminal statute is not contained in the statute that criminalizes the conduct in question but rather in a separate statute, the prosecution is not required to charge in an indictment (and thereafter prove at trial) that the defendant's conduct did not fit within the statutory exemption; instead a defendant claiming such a statutory exemption must assert such exemption either as a "general issue or by affirmative defense."  *New York v. Kohut*, 30 N.Y.2d 183, 187 (N.Y. 1972); *see generally* W. Donninor, Practice Commentaries, N.Y. Penal L. § 265.20 (McKinney's Consolidated Laws of New York Ann. [2008].)   In this regard, the Court finds the case of *New York v. Washington*, 209 A.D.2d 162 (N.Y. App. Div., 1st Dept. 1994) to be instructive.  In that case, the trial court granted defendant's motion to dismiss the indictment which had charged the defendant with criminal possession of a weapon based upon defense counsel's argument that the prosecutor failed to establish before the grand jury that the defendant did not possess a license for weapon he was accused of criminally possessing.  (*Id.* at 163).  In reversing that determination, the Appellate Division noted as follows:

> The statutory exemption of licensed persons from prosecution for criminal possession of a weapon is not found in the . . . sections of the Penal Law defining criminal possession of a weapon . . . . Rather, the exemption is found in a different statute, Penal Law § 265.20(a)(3). Accordingly, the evidence before the grand jury was not legally insufficient merely because it did not establish prima facie that the defendant had no license for the revolver in question (*People v. Kohut*, *supra*; *see*, *People v. LaPorta*, 50 A.D.2d 1007, 376 N.Y.S.2d 698 [3d Dept. 1975]).

*Washington*, 209 A.D.2d at 163.  Petitioner's claim that his conviction must be set aside because the prosecution failed to demonstrate that he lacked a license for the subject firearm is therefore without substance.

---

[7]      The statutory exemptions from the criminal possession of weapon crimes delineated in the Penal Law include a specific exemption where an individual was issued a license by the State to possess a firearm.  (Penal Law § 265.20[3].)

Petitioner next argues that "there was no evidence . . . that the respective firearm was less than 18 inches in length." (Petition, Ground A.)[8]  However, this claim appears to ignore the fact that Detective D. Halpin of the Albany Police Department testified that he personally measured the shotgun Petitioner was accused of criminally possessing, and that the length of the barrel from "the end of the muzzle . . . to where the shotgun shell would be placed into" measured 17 and 1/8 inches.  (Trial Tr. at 285-86.)  On cross-examination, that witness reiterated and clarified that testimony:

> Defense Counsel:      Now, you indicated that you're the individual who measured this barrel?
>
> Detective Halpin :    Yes.
>
> Defense Counsel:      And in measuring that barrel, you indicated that it's 17 and one-eighth inches long?
>
> Detective Halpin:     That's correct.

(Trial Tr. at 287.)   Petitioner's claims that there was "no evidence" that the firearm he was accused of criminally possessing was less than eighteen inches in length (Petition , Ground A), or that the testimony offered by the prosecution regarding the length of the shotgun failed to establish that petitioner was guilty of the crime charged (Traverse at 7-8), is meritless.

In his final theory offered in support of his initial ground for relief, Petitioner claims that his conviction must be set aside because the gun he was accused of criminally possessing was "an antique firearm exempt from the dictates of the statute."  (Petition, Ground A.)  An "antique firearm" is defined in the Penal Law as "[a]ny unloaded muzzle loading pistol or revolver . . . or a

---

[8]      The length of the shotgun Petitioner possessed at the time of his arrest is significant because New York defines a firearm as, *inter alia*, "a shotgun having one or more barrels less than eighteen inches in length."  Penal Law § 265.00(3).  That statute further provides that, for purposes of that subdivision of the Penal Law, "the length of the barrel on a shotgun or rifle shall be determined by measuring the distance between the muzzle and the face of the bolt, breech, or breechlock when closed and when the shotgun or rifle is cocked."  *Id.*

pistol or revolver which uses fixed cartridges which are no longer available in the ordinary channels of commercial trade." Penal Law § 265.00(14).  As a New York State Supreme Court noted in *New York v. Mott*, 112 Misc.2d 833 (N.Y. Sup. Ct., New York Cnty. 1982),

> the legislature did not see fit to except antique firearms entirely from the operation of the statutes.  Rather it limited the exception to *unloaded* antique firearms.  The crucial distinction, therefore, between the permissible act (possession of an antique firearm) and the criminal one, is founded upon whether or not the weapon is loaded.

*Mott*, 112 Misc.2d at 835 (emphasis in original.)  Under Penal Law § 265.00(15), a "loaded firearm" is defined as "any firearm loaded with ammunition or any firearm which is possessed by one who, at the same time, possesses a quantity of ammunition which may be used to discharge such firearm."  The Appellate Division properly found that the firearm Petitioner was accused of criminally possessing was "loaded" because "the ammunition in [Petitioner's] pocket could be used in th[e] weapon" he was holding.  *Tillery,* 60 A.D.3d at 1205.  Because New York's exemption concerning antique firearms pertains only to *unloaded* weapons, and the weapon Petitioner was accused of possessing was *loaded* as that term is defined by the Penal Law, Petitioner's claim that his conviction must be set aside because he was in possession of an antique firearm at the time of his arrest is plainly without substance.

Because nothing before this Court suggests–much less establishes–that the Appellate Division's decision denying Petitioner's claim challenging the sufficiency of the evidence is either contrary to, or reflects an unreasonable application of, the clearly established Supreme Court precedent referenced above, his initial ground for relief is denied.

### ii.    Propriety of Sentence

In his third ground for relief, Petitioner argues that the imposed sentence of nine years (with an additional five years post-release supervision) "run[s] afoul of the Eighth Amendment's prohibition against Cruel and Unusual Punishment."  (Petition, Ground "C.")

15

"The Eighth Amendment, which forbids cruel and unusual punishments, contains a 'narrow proportionality principle' that 'applies to noncapital sentences.'" *Ewing v. California*, 538 U.S. 11, 20 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957, 996-997 [1991]).[9]   Such Amendment prohibits the imposition of a sentence that is "grossly disproportionate to the severity of the crime." *Rummel v. Estelle*, 445 U.S. 263, 271 (1980).   However, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Id.*, 445 U.S. at 272; *see Harmelin*, 501 U.S. at 995.

Petitioner argues that the sentence imposed on him "is grossly disproportionate to the severity" of the offense of which he was convicted.   (Supporting Mem. at 11.)   He then argues that "contemporary society would not tolerate a nine year prison term for a near trivial overindulgence in constitutionally protected conduct."   (*Id.*)

Unfortunately for Petitioner, the Second Circuit has opined that a sentence of imprisonment that is within the limits of a valid state statute is not cruel and unusual punishment in a constitutional sense.   *See White*, 969 F.2d 1381, 1383 (2d Cir. 1992); *accord, Hogan v. Ercole*, 05-CV-5860, 2011 WL 3882822, at *16 (E.D.N.Y. Sept. 2, 2011); *Brumfield v. Stinson*, 297 F. Supp.2d 607, 622 (W.D.N.Y. 2003).

At the proceeding at which Petitioner was sentenced for his crime, the County Court noted that the maximum term of imprisonment to which he was subject for his weapons possession conviction was fifteen (15) years.   (Sentencing Tr. at 27).   That observation is consistent with the Penal Law.   *See Rosario v. Walsh*, 05-CV-2684, 2006 WL 1431410, at *24 (S.D.N.Y. May 25, 2006) ("Second degree criminal possession of a weapon is a class C felony, carrying a maximum of fifteen years imprisonment.").

---

[9]      The Eighth Amendment's prohibition against cruel and unusual punishments applies to the States through the Fourteenth Amendment.   *Ewing*, 538 U.S. at 20.

Because nothing before this Court suggests–much less establishes–that the imposed sentence is not authorized by New York law or is otherwise grossly disproportionate to the severity of his weapons possession conviction, the Court denies Petitioner's third ground for relief.

### iii.    Prosecutorial Misconduct

In his fourth ground, Petitioner generally argues that he was deprived of his right to a fair trial due to comments made by the prosecutor during the course of his summation.  Petitioner specifically contends that during the course of delivering his closing argument, the prosecutor wrongfully: (1) vouched for the credibility of the People's witnesses; (2) referred to facts not in evidence; and (3) speculated as to the lack of forensic evidence and suggested to the jury that it should ignore the lack of such evidence.  (Petition, Ground D.)

A criminal defendant's right to a fair trial is mandated by the Due Process Clause of the United States Constitution.  *Albright v. Oliver*, 510 U.S. 266, 273 n.6 (1994) (citing *United States v. Agurs*, 427 U.S. 97, 107 [1976]).[10]  However, for habeas relief to be granted based on a claim of prosecutorial misconduct, the alleged misconduct must have " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' "  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 [1974]).  In considering such a claim, courts are to focus on "the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  Where the claimed misconduct occurred during the course of the prosecution's closing argument, a petitioner must show " 'that he suffered actual prejudice because the prosecutor's comments during summation had a substantial and injurious effect or influence in determining the jury's verdict.' "  *Tankleff v. Senkowski*, 135 F.3d 235, 252 (2d Cir. 1998) (quoting *Bentley v. Scully*, 41 F.3d 818, 824 [2d Cir. 1994]); *see also Cooley v.*

---

[10]      "A right to a fair trial is a right . . . protected by the due process clause of the Fourteenth Amendment."  *Adamson v. California*, 332 U.S. 46, 53 (1947).

*Superintendent, Auburn Corr. Fac.*, 09-CV-6384, 2011 WL 2651078, at *7 (W.D.N.Y. July 6, 2011).  Relevant factors to be considered in arriving at this determination include the severity of the prosecutor's conduct; the measures, if any, that the trial court took to remedy any prejudice; and the certainty of the petitioner's conviction absent the prosecutor's objectionable remarks. *Bentley*, 41 F.3d at 824; *Floyd v. Meachum*, 907 F.2d 347, 355 (2d Cir. 1990); *Brown v. Phillips*, 03-CV-0361, 2006 WL 656973, at *7 (E.D.N.Y. Mar. 13, 2006).

Petitioner initially contends that the prosecutor wrongfully vouched for the credibility of the prosecution witnesses he called at trial.  (Petition , Ground "D".)  Specifically, Petitioner notes that in referring to the testimony offered by the prosecution concerning the length of time Petitioner was in possession of the gun, the District Attorney declared that "the police could have said, yeah, we saw [Petitioner] running around with this.  No.  You heard the testimony.  Yeah, he had it for a matter of seconds."  (Trial Tr. at 334.)  Petitioner's claim that the above excerpt establishes that the prosecution wrongfully vouched for the credibility of it's witnesses appears to ignore the fact that, in the portion of defense counsel's closing argument wherein counsel requested that the jury assess the credibility of the prosecution witnesses, Petitioner's attorney argued that their testimony contained "many inconsistencies" and may have been "concocted to fit the occasion."  (Trial Tr. at 326.)  The above-described comment of the prosecutor in his summation therefore plainly reflected a measured response to defense counsel's closing argument. *Johnson v. Ricks*, 02-CV-1366, 2007 WL 3171782, at *18 (N.D.N.Y. Oct. 29, 2007) (McCurn, J.) (citing *Walker v. Bennett*, 262 F. Supp.2d 25, 40 [W.D.N.Y. 2003]).

Next, Petitioner argues that the prosecutor wrongfully referred to matters not in evidence when he declared that two police officers observed Petitioner carrying a gun on the day of his arrest.  (Petition, Ground "D".)  Petitioner argues that such statement was improper because "there was no evidence that police had seen a gun in petitioner's hand."  (*Id.*)  The record reflects the

18

following exchange during the course of the prosecution's summation:

| District Attorney: | It wasn't like this gun was found in an alley somewhere and the police are trying to link it to someone. You have two police officers that say they saw [Petitioner] carrying that particular item. . . . So – |
|---|---|
| Defense Counsel: | Your Honor, I'm going to object. I don't recall any testimony that [Petitioner] was ever carrying a gun. |
| The Court: | Overruled. Ladies and gentlemen, your recollection of the evidence is what is controlling and this is [the prosecutor's] view of the evidence. |
| District Attorney: | They saw an individual walking around just like this (indicating). Two officers observed this, [Petitioner] walking just like this with the item contained within the alligator. Thrown into the vehicle when the police came without anyone intervening. Observed that weapon inside of that alligator. There's no other testimony that you've heard to contradict that. None whatsoever, ladies and gentlemen. |

(Trial Tr. at 336.) Thus, the County Court overruled defense counsel's objections to the portion of

the District Attorney's summation about which Petitioner now complains, and reminded the jury

that it was the jury members' recollection of the evidence, and not that of the prosecution, that was

controlling. (*Id.*) Furthermore, the prosecution did not reiterate that statement after defense

counsel's objection was overruled, but instead argued that the police officers observed Petitioner

walking with an alligator that contained the object Petitioner was accused of criminally

possessing. (*Id.*)   Petitioner is not entitled to the relief he seeks based upon this theory, because

(1) the claimed misconduct of the District Attorney was not severe, (2) the County Court properly

determined that the defense was not unfairly prejudiced by the comment, and (3) Petitioner's

conviction on the charge was certain even if that statement had not been made in the District

Attorney's summation.[11]

Next, Petitioner objects to the prosecution's reference in its closing argument regarding

the lack of forensic evidence introduced at trial.  (Petition, Ground "D.")  Petitioner additionally

argues that the District Attorney's comments regarding that lack of evidence amounted to an

instruction to the jury that it should ignore the fact that no forensic evidence was produced by the

prosecution, and also "implied that the prosecutor had inside knowledge concerning the inner

workings of the criminal justice system and what were appropriate investigative techniques in

individual cases."  (*Id.*; *see also* Trial Tr. at 335-36.)  However, these claims appear to overlook

the fact that Petitioner's counsel stated the following during the course of his closing argument:

> We also spoke with respect to fingerprints and DNA.  No
> fingerprints were done.  No fingerprints were done on the gun, no
> fingerprints were done on the bullets, nothing whatsoever.
> Lieutenant Schechter, as I recall, didn't even look at the shells, the
> cartridges, with respect to any tool marks or anything of that nature.
> And again they weren't printed.  He explained to you how this gun
> would be loaded.  There was testimony as to what part of these
> cartridges would be held when the gun was loaded.  But yet nothing
> was done with respect to DNA and fingerprints.

(Trial Tr. at 320-21.)  In light of the foregoing, the District Attorney's comments that form the

basis of this portion of Petitioner's fourth ground for relief were plainly a measured response to

defense counsel's statements in his closing argument regarding the lack of forensic evidence

offered by the prosecution at trial.

---

[11]        Because the testimony demonstrated that the gun Petitioner was accused of
possessing was contained within a toy alligator, and prosecution witnesses unequivocally testified
that they observed Petitioner carrying that toy alligator, the prosecution's statement that the police
saw Petitioner carrying a gun was also fair comment based on the evidence adduced at trial.  *See
Thompson v. Fischer*, 02-CV-0526, 2003 WL 23198787, at *3 (E.D.N.Y. Oct. 31, 2003) (holding
that prosecutor's summation may contain fair comment based upon the evidence); *accord, King v.
Greiner*, 210 F. Supp.2d 177, 180  (E.D.N.Y. 2002).

Because the Third Department's denial of Petitioner's appellate claim alleging prosecutorial misconduct (*Tillery*, 60 A.D.3d at 1206) is neither contrary to, nor reflects an unreasonable application of, the clearly established Supreme Court precedent noted above, the Court denies Petitioner's fourth ground for relief.

### iv.     Ineffective Assistance of Counsel

Petitioner next argues that his trial counsel rendered ineffective assistance because he failed to object "to the entirety of the prosecutor's egregious summation remarks."  (Petition, Ground "E".)

The Sixth Amendment to the United States Constitution provides that:  "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."  U.S. Const., Amend. VI.  To establish a violation of this right to the effective assistance of counsel, a habeas petitioner must show both:  i) that counsel's representation fell below an objective standard of reasonableness, measured in light of the prevailing professional norms; and ii) resulting prejudice, that is, a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 688-90 (1984); *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) ("the legal principles that govern claims of ineffective assistance of counsel" were established in *Strickland*).

 As noted above, this Court has concluded that the prosecutor did not engage in misconduct during his summation.  Petitioner therefore cannot demonstrate that it was objectively unreasonable for counsel to refrain from lodging an objection to such purported misconduct.[12] Moreover, the Appellate Division's determination that the alleged misconduct of the District

---

[12]     As noted above, defense counsel ***did*** object to the prosecutor's statement that the jury had heard testimony that Petitioner was observed carrying a gun on the day charged in the Indictment; however that objection was overruled by the County Court.  (Trial Tr. at 336.)

Attorney "did not constitute the type of conduct for which reversal would be warranted" (*Tillery*, 60 A.D.3d at 1206) establishes that Petitioner was not prejudiced by trial counsel's failure to object to that claimed misconduct.

Because nothing before the Court suggests that the Appellate Division's decision rejecting this aspect of Petitioner's appeal (*Tillery*, 60 A.D.3d at 1206) is either contrary to, or represents an unreasonable application of, *Strickland* and its progeny, this Court denies his fifth ground for relief.

### v.      Fourth Amendment Claim

In his sixth ground, Petitioner claims that statements he made to law enforcement agents were obtained as a result of an "unlawful search and seizure" and therefore should have been suppressed by the trial court.   (Petition, Ground F.)

In considering this claim, this Court notes that the Supreme Court has held that an individual's claim that statements provided to law enforcement agents were the product of an unlawful search and seizure fall within the confines of the Fourth Amendment.  *See Davis v. Mississippi*, 394 U.S. 721, 726-27 (1969) (holding that Fourth Amendment applies to investigatory seizures) (citing *Perry v. Ohio*, 392 U.S. 1, 19 [1968]); *Cardwell v. Taylor*, 461 U.S. 571, 572-73 (1983); *United States v. McCargo*, 464 F.3d 192, 196 (2d Cir. 2006); *see, e.g.*, *Hill v. Conway*, 04-CV-0524, 2008 WL 8095710, at *13 (N.D.N.Y. June 2, 2008) (Treece, M.J.) (finding that the following claim must be viewed as a claimed violation of one's rights under the Fourth Amendment: a claim that a police officer approached petitioner without "reasonable cause," that the ensuing arrest was unlawful, and that his subsequent statements to law enforcement officials must therefore be suppressed).

In *Stone v. Powell*, 428 U.S. 465 (1976), the Supreme Court opined that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state

22

prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone*, 428 U.S. at 494; *see also Wallace v. Kato*, 549 U.S. 384, 395 n.5 (2007); *Capellan v. Riley*, 975 F.2d 67, 70 (2d Cir. 1992); *Munford v. Graham*, 09-CV-7899, 2010 WL 644435, at *14 & n.23 (S.D.N.Y. Feb. 24, 2010). The Second Circuit has noted that review of Fourth Amendment claims in federal habeas petitions may be undertaken in only one of two instances: (1) if the state has provided no corrective procedures at all to redress the alleged Fourth Amendment violations; or (2) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process. *Capellan*, 975 F.2d at 70; *Munford*, 2010 WL 644435, at *14.  An "unconscionable breakdown" in the underlying process has been found where the state court failed to conduct a reasoned inquiry into the petitioner's claim, a "disruption or obstruction" occurred during the course of the state court proceeding, the court relied upon perjurious testimony in arriving at its decision, or evidence demonstrated that the decision maker accepted a bribe in the related criminal matter.  *Munford*, 2010 WL 644435, at *16 (collecting cases).

New York State has provided an opportunity for defendants to fully and fairly litigate Fourth Amendment claims.  *See* NY CPL § 710; *Capellan*, 975 F.2d at 70 n. 1; *Jackson v. Lacy*, 74 F. Supp.2d 173, 176 (N.D.N.Y. 1999) (McAvoy, C.J.) (adopting Report-Recommendation of Smith, M.J.).  Specifically, under the NY CPL, a criminal defendant may move to suppress evidence he believes was unlawfully or improperly acquired if he "has reasonable cause to believe that such [evidence] may be offered against him in a criminal action."  *See* NY CPL § 710.20.

In his Traverse, Petitioner appears to argue that an unconscionable breakdown occurred during the course of his suppression hearing because the prosecution failed to identify any crime

the police could have reasonably suspected Petitioner had committed at the time he was questioned by law enforcement agents.  (Traverse at 3-4.)[13]

However, as the Appellate Division properly observed in rejecting this aspect of Petitioner's appellate challenge to his conviction:

> evidence credited at the suppression hearing established that police had an objective, credible reason for approaching and speaking to [Petitioner] since he and his companions were partially blocking a street.  The request that [Petitioner] not place his hand in his pocket as he moved toward the officer was a *de minimus* intrusion and a reasonable safety measure.  [Petitioner's] continued placing of his hand in the pocket elicited a reasonable inquiry as to why he was doing so.  In answer to that question, [Petitioner] acknowledged bullets in his pocket, which elevated the level of permissible inquiry.  [Petitioner] then indicated that a gun was in the car, and [an officer] looked through the car window where, in open view, he could see the shotgun sticking out of the alligator, which provided probable cause to arrest [Petitioner].

(*Tillery*, 60 A.D.3d at 1205).  Thus, as the County Court noted in denying Petitioner's motion to suppress, the police acted properly in approaching Petitioner and the other people who were with him at that time on August 14, 2007 because the group was stopped in the middle of a street.  Petitioner's behavior after he was asked to leave the street justified the additional questioning of Petitioner made by the police, and his statements to the police that he was both in the possession of ammunition as well as a gun justified his subsequent arrest.  (Dkt. No. 10, Attach. 1 [Transcript of Suppression Hearing (1/10-11/08)] [hereinafter "Suppression Tr."] at 57-58.)  This Court concurs with the findings of the Appellate Division that the questioning and subsequent arrest of Petitioner was entirely appropriate under the facts and circumstances presented to the County Court.

---

[13]     Petitioner asserts that, at most, he may have been guilty of an infraction of New York's Vehicle and Traffic Law at the time he was initially questioned by the police.  (Traverse at 4.)

In sum, after having reviewed the transcript of the suppression hearing and other matters in the state court record regarding this issue, this Court finds no support for Petitioner's assertion that the state courts failed to conduct a reasoned method of inquiry into the relevant questions of fact and law concerning Petitioner's suppression motion.  This Court therefore finds that it may not consider the substance of the claims asserted by petitioner in his sixth ground, *see Stone*, and accordingly denies such ground for relief.  *See Capellan*, 975 F.2d at 70; *Richard v. Girdich*, 03-CV-0920, 2009 WL 2045685, at *9 (N.D.N.Y. July 10, 2009) (Scullin, J.), *appeal dismissed Richard v. Girdich*, No. 09-3857, Order (2d Cir. Jan. 10, 2010);  *McPherson v. Greiner*, 02-CV-2726, 2003 WL 22405449, at *16 (S.D.N.Y. Oct. 22, 2003).

### vi.    *Miranda* **Claim**

ln his final ground for relief, Petitioner argues that his statements to law enforcement agents should have been suppressed by the trial court because he was not administered his *Miranda* warnings[14] before he provided his statements to the authorities. (Petition, Ground "G.") In his Traverse, he further asserts that "he actually was in custody for *Miranda* purposes" at the time he provided such statements.  (Traverse at 4-5.)

Under *Miranda*, "a person questioned by law enforcement officers after being 'taken into custody or otherwise deprived of his freedom of action in any significant way' must first 'be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.' " *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Miranda*, 384 U.S. at 444).  However, *Miranda* warnings, are required only when a suspect interrogated by the police is

---

[14]        *Miranda v. Arizona*, 384 U.S. 436 (1966).

"in custody." *Thompson v. Keohane*, 516 U.S. 99, 102 (1995); *accord, Heron v. New York*, 98-CV-7941, 1999 WL 1125059, at *8 (S.D.N.Y. Dec. 8, 1999).  In evaluating whether a person is in custody for *Miranda* purposes, a court must consider "the circumstances surrounding the interrogation; and . . . given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *United States v. Romaszko*, 253 F.3d 757, 760 (2d Cir. 2001) (quoting *Thompson*, 516 U.S. at 112).  In considering this claim, this Court is cognizant of the Second Circuit's pronouncement that legal questions, such as whether a defendant has effectively waived his federal constitutional rights in a proceeding, are governed by federal standards for which no deference under the AEDPA is mandated.  *Oyague v. Artuz*, 393 F.3d 99, 104 (2d Cir. 2004).

After having reviewed relevant portions of the state court record, including the transcript of the suppression hearing conducted by the County Court, this Court is satisfied that Petitioner was not in custody until ***after*** he stated that he was in possession of both bullets on his person and a firearm in the nearby car.  Specifically, the record establishes that Petitioner had not been restrained by the police prior to making those admissions, nor did the officers ever tell Petitioner prior to that time that he was not free to leave the area.  (Suppression Tr. at 8-10, 17-19, 32-36, 45-48).  This Court therefore endorses the conclusion of the Appellate Division that "[t]he credible evidence at the suppression hearing reveals that [Petitioner] was not in custody prior to when he volunteered this information." (*Tillery*, 60 A.D.3d at 1205.)  Because Petitioner was not in custody at the time he provided the incriminating statements that he subsequently sought to suppress, the Court denies Petitioner's seventh and final ground for relief.

**III.    CERTIFICATE OF APPEALABILITY**

Finally, the Court notes that 28 U.S.C. § 2253(c) provides, in relevant part, as follows:

> Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from . . . the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . . .[15]

28 U.S.C. § 2253(c)(1)(A).  A Certificate of Appealability may be issued only "if the applicant

has made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. §

2253(c)(2).  Because Petitioner has failed to make such a showing herein, the Court declines to

issue any Certificate of Appealability in this matter.

**ACCORDINGLY**, it is

**ORDERED** that Petitioner's Petition (Dkt. No. 1) is **DENIED** and **DISMISSED** in its

entirety; and it is further

**ORDERED** that no certificate of appealability shall issue because Petitioner has failed

to make a "substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. §

2253(c).

Dated: November 29, 2011
          Syracuse, New York

Hon. Glenn T. Suddaby
U.S. District Judge

---

[15]    Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  Fed. R. App. P. 22(b).